## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

SPEECH FIRST, INC.

                *Plaintiff*,

v.

KAYSE SHRUM, in her individual
capacity and official capacity as President
of Oklahoma State University, *et al.*,

              *Defendants.*

**Case No. CIV-23-29-J**

## DEFENDANT, KAYSE SHRUM'S, FRCP 12(b)(1) MOTION TO DISMISS BASED ON PLAINTIFF'S LACK OF STANDING

Respectfully submitted,

s/Steve Stephens
Steve Stephens, OBA #10479
Clinton W. Pratt, OBA #21329
Gaylan Towle II, OBA #32884
Kinsey Wyatt, OBA #32778
Lyman G. Lenker, IV OBA #33219
Board of Regents for the Oklahoma
Agricultural and Mechanical Colleges
5th Floor, Student Union Building
Stillwater, OK 74078
(405) 744-6494 (phone)

**ATTORNEYS FOR DEFENDANT,
KAYSE SHRUM IN HER OFFICIAL
CAPACITY AS PRESIDENT OF
OKLAHOMA STATE UNIVERSITY**

Respectfully submitted,

s/Michael Burrage (with permission)
Michael Burrage, OBA #1350
Reggie Whitten, OBA #9576
J. Renley Dennis, OBA #33160
Austin R. Vance, OBA #33294
Whitten Burrage
512 N. Broadway Ave., Suite 300
Oklahoma City, OK 73102
(405) 516-7800 (phone)

**ATTORNEYS FOR DEFENDANT,
KAYSE SHRUM IN HER
INDIVIDUAL CAPACITY**

## <u>**TABLE OF CONTENTS**</u>

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ................................................................................ ii, iii

  I.    INTRODUCTION .......................................................................................... 1

  II.   STANDARD OF REVIEW ............................................................................ 3

  III.  ARGUMENT ................................................................................................... 4

        A.  PLAINTIFF CANNOT ESTABLISH STANDING IN ITS OWN RIGHT . 4

        B.  PLAINTIFF HAS FAILED TO ESTABLISH, AND CANNOT
            ESTABLISH, ASSOCIATIONAL STANDING ON THE FACTS
            ALLEGED IN THE COMPLAINT ............................................................ 5

            1.  Anonymous Declarations are Inadequate to Satisfy Associational
               Standing ............................................................................................ 6

            2.  Speech First Cannot Establish the Students Would Have Standing
               to Sue in Their Own Right ................................................................. 9

               a.  The Expressions the Students Allegedly want to Make are not
                   Proscribed by the Challenged Policies and Processes .......... 10

                   i.    Harassment Policy ...................................................... 11

                   ii.   Bias Incident Response Team .................................... 16

               b.  The Desired Expressions are not Subject to a Credible Threat
                   of Enforcement by the BIRT ................................................. 17

            3.  Speech First's Claims Require the Students' Participation ........... 22

  IV.  CONCLUSION ............................................................................................ 24

# TABLE OF AUTHORITIES

## CASES

*Abbott v. Pastides*, 900 F.3d 160 (4th Cir. 2018) .................................................. 10, 20, 21

*Am. Forest & Paper Ass'n. v. EPA*, 154 F.3d 1155 (10th Cir. 1998) ................................. 9

*Associated Gen. Contractors of Am. v. Cal. Dep't of Transp.*, 713 F.3d 1187 (9th Cir. 2013) ............................................................................................................................................... 7

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289 (1979) ..................... 9, 10, 21

*Cent. Green Co. v. U.S.*, 531 U.S. 425 (2001) ..................................................................... 4

*Citizen Ctr. v. Gessler*, 770 F.3d 900 (10th Cir. 2014) ..................................................... 10

*Do No Harm v. Pfizer Inc.*, No.1:22-cv-07908, 2022 WL 17740157 (S.D.N.Y. Dec. 16, 2022) .................................................................................................................................. 8, 23

*Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869 (7th Cir. 1997) .......................... 8

*Draper v. Healey*, 827 F.3d 1 (1st Cir. 2016) ...................................................................... 6

*Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1 (2004) ............................................ 22

*Ga. Republican Party v. SEC*, 888 F.3d 1198 (11th Cir. 2018) ......................................... 7

*Harris v. McRae*, 448 U.S. 297 (1980) ......................................................................... 22, 24

*Holt v. U.S.*, 46 F.3d 1000 (10th Cir. 1995) ..................................................................... 3, 4

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977) ................................. 6, 22

*Kerr v. Polis*, 20 F.4th 686 (10th Cir. 2021) ...................................................................... 4

*Laird v. Tatum*, 408 U.S. 1 (1972) ..................................................................................... 10

*Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118 (2014) .......................... 22

*Lujan v. Defs. Of Wildlife*, 504 U.S. 555 (1992) .............................................. 4, 5, 6, 9, 16

*Osage Producers Ass'n v. Jewell*, 191 F. Supp. 3d 1243 (N.D. Okla. 2016) ................... 7

*Plaintiff B. v. Francis*, 631 F.3d 1310 (11th Cir. 2011) .................................................... 8

*Prod. of Renewables United for Integrity Truth and Transparency v. EPA*, No. 19-9532, 2022 WL 538185 (10th Cir. Feb. 23, 2022) ........................................................................ 7

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175 (4th Cir. 2013) ........................................................................................................ 7

*Schlesinger v. Reservists Comm. To Stop the War*, 418 U.S. 208 (1974) .......................... 6

*Speech First v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022) .............................................. 2

*Speech First v. Fenves*, 979 F.3d 319 (5th Cir. 2020) ........................................................ 2

*Speech First v. Khator*, No. CV H-22-582, 2022 WL 1638773 (S.D. Tex. May 19, 2022)2

*Speech First v. Killeen*, 968 F.3d 628 (7th Cir. 2020) ..................................... 2, 19, 20, 21

*Speech First v. Sands*, No. 7:21-CV-00203, 2021 WL 4315459 (W.D. Va. Sept. 22, 2021) ............................................................................................ 2, 13, 14, 17, 21

*Speech First v. Schlissel*, 939 F.3d 756 (6th Cir. 2019) ...................................... 2

*Speech First v. Wintersteen*, No. 4:20-CV-2, 2020 WL 6131393 (S.D. Iowa Feb. 25, 2020) ............................................................................................ 2

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ............................................... 4, 5, 9

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ........................................ 4, 5, 6, 7, 8

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) .......................... 9, 10, 17, 18, 19

*Tenn. Republican Party (16-3360) v. SEC*, 863 F.3d 507 (6th Cir. 2017) ........................ 7

*United Food and Com. Workers v. Brown Grp.*, 517 U.S. 544 (1996) ........................... 22

*W.N.J. v. Yocum*, 257 F.3d 1171 (2001) ............................................................ 8

*Warth v. Seldin*, 422 U.S. 490 (1975) .............................................................. 5

*Younger v. Harris*, 401 U.S. 37 (1971) ........................................................... 10

Comes now, Defendant, Kayse Shrum as President of Oklahoma State University ("**Defendant**" or "**President Shrum**") and moves the Court to dismiss all claims of Plaintiff, Speech First ("**Plaintiff**" or "**Speech First**"), pursuant to Fed. R. Civ. P. 12(b)(1). As set forth below, this Court lacks subject matter jurisdiction over Plaintiff's claims because Speech First lacks standing as to each claim. In support of this Motion, Defendant would show the Court:

## I.     INTRODUCTION

Speech First initially sued each member of the Board of Regents for the Oklahoma Agricultural and Mechanical Colleges (each a "**Regent**" and collectively the "**Board**"), which governs Oklahoma State University ("**OSU**"), and multiple administrators at OSU, including President Shrum, asserting claims against those defendants in their representative and individual capacities. Plaintiff could not assert those claims directly against OSU, due to the doctrine of sovereign immunity. In such situations, the provisions of 42 U.S.C. § 1983 can be utilized to sue individuals in their representative capacity for injunctive relief, seeking to prevent enforcement of certain governmental policies or processes. By agreement of the parties, all Regents and OSU administrative defendants (except President Shrum) were dismissed without prejudice, with the stipulation that "any injunctive or declaratory relief or attorney's fees awarded in this action to Plaintiff against Defendant Kayse Shrum will apply to and be binding on Oklahoma State University." Dkt. No. 5.

At issue are challenges to OSU's (1) definition of "harassment" in its Student Code of Conduct (the "**Harassment Policy**"), (2) use of a Bias Incident Response Team (the

1

"**BIRT**") to address reported incidents of bias, and (3) OSU Policy 3-0601 § 4.04 (the "**Appropriate Use Policy**"), a computer use policy, as it pertains to students' use of their @okstate.edu email addresses to send emails transmitting political campaign messages (collectively the "**Challenged Policies and Processes**"). In support of its claims, Plaintiff fails to identify a single OSU student who purportedly wants to speak on the matters allegedly proscribed by the Challenged Policies and Processes. Instead, Plaintiff identifies only three (3) anonymous students, students "A", "B", and "C," (each a "**Student**" and collectively the "**Students**") to prosecute its claims. Additionally, in support of its request for a preliminary injunction, Plaintiff provided declarations from the Students, which they "signed" anonymously (the "**Anonymous Declarations**").

This is not the first case Plaintiff has filed challenging similar policies and processes on university campuses—in fact, since May of 2018, Plaintiff has sued the presidents and other institutional officials at seven (7) other public universities (the "**Speech Cases**").[1] In each case, Plaintiff followed a fairly scripted and formulaic path—*slightly* refining arguments in each new case. Plaintiff always made *generalized* complaints about *non-specific* incidents, trying to portray each campus environment as hostile to conservative student speech. The defendants in each case would then respond in similarly formulaic

---

[1] *See e.g.*, *Speech First v. Schlissel*, 939 F.3d 756 (6th Cir. 2019); *Speech First v. Killeen*, 968 F.3d 628 (7th Cir. 2020); *Speech First v. Fenves*, 979 F.3d 319 (5th Cir. 2020); *Speech First v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022); *Speech First v. Sands*, No. 7:21-CV-00203, 2021 WL 4315459 (W.D. Va. Sept. 22, 2021), *appeal filed* (No. 21-2061); *Speech First v. Khator,* No. CV H-22-582, 2022 WL 1638773 (S.D. Tex. May 19, 2022); *see also Speech First v. Wintersteen*, No. 4:20-CV-2, 2020 WL 6131393 (S.D. Iowa Feb. 25, 2020) (Resistance filed by Wendy Wintersteen, President of Iowa State University Science and Technology, in response to Speech First's Motion for Preliminary Injunction).

fashion to Speech First's motions for preliminary injunction. ***Although many defendants in the Speech Cases challenged Speech First's standing when responding to Speech First's motions for preliminary injunction, this Motion appears to mark the first time a defendant has filed a 12(b)(1) motion challenging Speech First's standing to sue***. Because this Motion presents a jurisdictional challenge, Plaintiff must establish standing before this Court is vested with jurisdiction to consider Plaintiff's claims and Motion for Preliminary Injunction.

Plaintiff has failed to establish standing in multiple regards. First, Plaintiff itself lacks standing to sue in its own right. Second, the majority of courts have held associational standing requires at least one member of the association to be identified by name in the pleadings. Lastly, Plaintiff cannot establish associational standing because Plaintiff failed to satisfy two (2) of the three (3) prongs of the associational standing test. The first prong requires a plaintiff association to establish its identified members have Article III standing to bring the claims as pled. Here, they do not. The third prong requires the plaintiff association to establish that neither the claims made, nor the relief requested, requires the participation of the members. Here, because Plaintiff's claims rely upon the participation of individual student members, Plaintiff cannot satisfy the third prong either.

## II.     STANDARD OF REVIEW

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the allegations in the complaint. *Holt v. U.S.*, 46

F.3d 1000, 1003 (10th Cir. 1995), *abrogated on other grounds* by *Cent. Green Co. v. U.S.*, 531 U.S. 425, 437 (2001). In reviewing a facial attack, a district court must accept the allegations in the complaint as true. *Id.*

      Second, a party may go beyond allegations in the complaint and challenge the facts upon which subject matter jurisdiction depends. *Holt*, 46 F.3d at 1003. When reviewing a factual attack on subject matter jurisdiction, a district court cannot presume the truthfulness of the complaint's factual allegations. *Id.* Accordingly, the court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id.* In such instances, a court's consideration of evidence outside the pleadings does not convert the motion to a Rule 56 motion. *Id.* The Tenth Circuit relied upon *Holt* as recently as December of 2021 for its discussion on the 12(b)(1) standard of review. *See Kerr v. Polis*, 20 F.4th 686, 700 (10th Cir. 2021).

      In the instant case, Speech First can neither overcome a facial challenge nor a factual challenge to standing based upon the allegations in the Complaint.

## III.    ARGUMENT

### A. PLAINTIFF CANNOT ESTABLISH STANDING IN ITS OWN RIGHT

Article III standing is an "irreducible constitutional minimum," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), a plaintiff must establish for each type of relief sought. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal citations omitted). To establish Article III standing, a plaintiff must show: "(1) [he] suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338

4

(2016) (internal citations omitted). An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (quotation marks and citations omitted). The Article III standing elements are an "indispensable part" of a plaintiff's case, and "each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof[.]" *Id.* at 561. Specifically, the elements obligate federal courts "to satisfy themselves that [a] plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction." *Summers*, 555 U.S. at 493 (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99 (1975)).

Here, the Court can quickly conclude Plaintiff cannot establish Article III standing in its own right. Plaintiff—a corporate body—does not allege OSU's Challenged Policies and Processes have injured it in any way. *See* Dkt. No. 1.  Instead, Plaintiff seeks redress only for alleged injuries suffered by a few of its alleged members: three anonymous OSU students. *See* Dkt. No. 1 at ¶¶ 6, 11. Thus, Speech First cannot, by itself, establish Article III standing.

### B. PLAINTIFF HAS FAILED TO ESTABLISH, AND CANNOT ESTABLISH, ASSOCIATIONAL STANDING ON THE FACTS ALLEGED IN THE COMPLAINT

Because Plaintiff cannot establish Article III standing individually, its ability to invoke federal court jurisdiction hinges on whether it can satisfy the elements of associational standing. Associational standing permits an organization to file and maintain suit on behalf of its members only if the organization shows: (1) *its members would otherwise have standing to sue in their own right*; (2) the interests it seeks to protect are germane to the

organization's purpose; and (3) **neither the claim, nor the relief requested, requires the participation of individual members in the lawsuit.** *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977) (emphasis added). If a plaintiff is not himself/herself the object of government action, "standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Summers*, 555 U.S. at 493–94 (citing *Lujan*, 504 U.S. at 562). In this case, Speech First's claims must be dismissed because:

- Anonymous declarations do not support associational standing;
- Speech First cannot satisfy the first prong of the associational standing test; and
- Speech First cannot satisfy the third prong of the associational standing test

### 1. Anonymous Declarations are Inadequate to Satisfy Associational Standing

As a prefatory yet dispositive matter, the Anonymous Declarations Plaintiff relies upon to satisfy associational standing are inadequate precisely because they are anonymous. An organizational plaintiff must specifically name a member with Article III standing unless all members of the organization are affected by the challenged conduct. *See Summers*, 555 U.S. at 498–99. The "requirement of **naming** the affected members has never been dispensed with," *id.* (emphasis added), and "assures that 'there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party[.]'"*Id.* at 493 (quoting *Schlesinger v. Reservists Comm. To Stop the War*, 418 U.S. 208, 221 (1974)).   A majority of the circuit courts that have addressed the naming requirement since *Summers* consistently held an organization must name an affected member to establish standing. *See e.g.*, *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (requiring submission of an affidavit from a named member for associational standing);

6

*Associated Gen. Contractors of Am. v. Cal. Dep't of Transp.*, 713 F.3d 1187, 1194 (9th Cir. 2013) (finding association lacked standing because it did "not identify any affected members by name"); *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1204 (11th Cir. 2018) (rejecting argument based on pre-*Summers* precedent and recognizing post-*Summers* requires "an organization name at least one member who can establish an actual or imminent injury"); *Tenn. Republican Party (16-3360) v. SEC*, 863 F.3d 507, 520 (6th Cir. 2017); *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013); *see also Prod. of Renewables United for Integrity Truth and Transparency v. EPA*, No. 19-9532, 2022 WL 538185, at *3 n.2 (10th Cir. Feb. 23, 2022) (unpublished order) ("Ordinarily, a prerequisite for organizations alleging associational standing is to identify their affected members."). District courts in the Tenth Circuit agree. *See Osage Producers Ass'n v. Jewell*, 191 F. Supp. 3d 1243, 1251 (N.D. Okla. 2016) (the "[a]mended [c]omplaint does not name any of its members . . . . Without such information, the OPA cannot establish associational standing.").

In this case, the Anonymous Declarations (which are not even included with the Complaint, but instead are attached to the Motion for a Preliminary Injunction) (*see* Dkt. Nos. 3-4, 3-5, 3-6) clearly run afoul of the *Summers* precedent, as reiterated by the majority of the circuit courts that have addressed the issue. *See Summers*, 555 U.S. at 498–99. Neither the Complaint nor the Anonymous Declarations identify by name any OSU student allegedly harmed by the Challenged Policies and Processes. *See* Dkt. Nos. 1, 3-4, 3-5, 3-6. All references to the purported student members are simply to "Student A," "Student B," or "Student C." *Id.* The declarations are even "signed" anonymously. *See* Dkt. Nos. 3-4, 3-

5, 3-6. Because Speech First's members also include non-OSU students, the sole exception to the naming requirement (that all members of the organization are affected by the challenged conduct) does not apply.[2] *See* Dkt. No. 1 at ¶ 10.

It is curious why the Anonymous Declarations contravene the *Summer*s naming requirement. Hot off the press is *Do No Harm v. Pfizer Inc.*, No.1:22-cv-07908, 2022 WL 17740157 (S.D.N.Y. Dec. 16, 2022) (slip op.) *appeal filed* (No. 23-15) (attached hereto as Exhibit 1). In that case, the court, citing *Summers*, held the plaintiff organization—who was represented by Speech First's counsel in this case—lacked standing because the organization failed to "identify by *name* any member with standing or advance a theory that all of its members [had] standing." *Do No Harm*, 2022 WL 17740157, at *10 (emphasis added).[3] The court engaged in a lengthy analysis of the naming requirement in the context of associational standing in response to the plaintiff's arguments that the naming requirement was inapplicable: (1) for purposes of associational standing; and (2) where organizational members want to remain anonymous. *Id.* at *7. The court expressly rejected *Do No Harm's* arguments in their entirety. *Id.* at *7–10.

---

[2] In certain limited circumstances, and only with the court's express permission, a party may proceed under a pseudonym when significant privacy interests are at stake, such as when a party's claims implicate birth control, abortion, and sexuality. *See W.N.J. v. Yocum*, 257 F.3d 1171 (2001). Those interests, however, are inapplicable in this case, where Plaintiff's members allegedly want to express their views very publicly in university classrooms and elsewhere on and off campus. It is widely recognized use of fictitious or anonymous names in a federal lawsuit is against public policy because the public has the right to know about the facts in the lawsuit, including the names of the parties. *See Plaintiff B. v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011); *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997).

[3] Plaintiff, Do No Harm, filed a notice of Intent to Appeal on January 3, 2023.

Because the Anonymous Declarations preclude Article III standing, Plaintiff's claims must be dismissed.

### 2.  Speech First Cannot Establish the Students Would Have Standing to Sue in Their Own Right

Even if the Court determines the Anonymous Declarations are sufficient, the Court should nevertheless dismiss Plaintiff's claims in their entirety because Plaintiff cannot show that Student A, B, or C *suffered an injury in fact that is fairly traceable to the Challenged Policies and Processes. See Spokeo, Inc.*, 578 U.S. at 338. The first prong of the associational standing test "embodies the Article III requirements of injury in fact, causal connection to the defendant's conduct, and redressability." *Am. Forest & Paper Ass'n. v. EPA*, 154 F.3d 1155, 1159 (10th Cir. 1998). Speech First must therefore establish, as to each claim, that Student A, B, or C suffered an injury in fact that is concrete, particularized, and actual or imminent, not conjectural or hypothetical.  *See Lujan,* 504 U.S. at 560.

Where a lawsuit challenges the constitutionality of a policy before the government enforces it, as Speech First does here, the standing inquiry looks to whether "threatened enforcement . . . creates an Article III injury." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). In the absence of an enforcement action, a plaintiff can establish standing only "under circumstances that render the threatened enforcement sufficiently imminent." *Id.* at 159. Specifically, to demonstrate injury-in-fact, the plaintiff must show "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by" the challenged provision. *Id.* (quoting *Babbitt v. United Farm Workers Nat'l*

*Union*, 442 U.S. 289, 298 (1979)). In addition, a plaintiff must show "a credible threat of prosecution" under the challenged provision. *Id.* "Either way, a credible threat of enforcement is critical; without one, a putative plaintiff can establish neither a realistic threat of legal sanction if he engages in the speech in question, nor an objectively good reason for refraining from speaking and 'self-censoring' instead." *Abbott v. Pastides*, 900 F.3d 160, 176 (4th Cir. 2018), *cert. denied*, 139 S. Ct. 1292 (2019).

Further, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Citizen Ctr. v. Gessler*, 770 F.3d 900, 913 (10th Cir. 2014) (quoting *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972)). Thus, plaintiffs can have standing based on the fear of chilled speech only if "the challenged exercise of governmental power [is] regulatory, proscriptive, or compulsory in nature, and the [plaintiffs are] either presently or prospectively subject to the regulations, proscriptions, or compulsions." *Laird*, 408 U.S. at 11. If plaintiffs fail to "'claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court." *Babbitt*, 442 U.S. 289, 298–99 (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)). Fear that is "chimerical"— either because the challenged policy has no enforcement component, or because it is unrealistic that enforcement will be directed at the plaintiff—does not suffice. *See Susan B. Anthony List*, 573 U.S. at 159.

      **a. The Expressions the Students Allegedly want to Make are not Proscribed by the Challenged Policies and Processes**

To determine whether the Challenged Policies and Processes proscribe the speech at issue, the Court must conduct a fact specific inquiry and examine the claims of allegedly 'chilled speech' in relation to the Challenged Policies and Processes that Speech First seeks to enjoin.

### i.    Harassment Policy

OSU agrees the topics the Students allegedly want to discuss are protected by the First Amendment. In fact, OSU encourages students to freely voice their opinions. However, it is patently clear the Harassment Policy does not proscribe those opinions. The Harassment Policy prohibits OSU students from:

> Engaging in verbal abuse, threats, intimidation, harassment, coercion, bullying, or other conduct that ***threatens or endangers*** the mental or physical health/safety *of **any person*** or causes ***reasonable apprehension*** of such harm that is persistent, severe, or pervasive and ***is subjectively offensive to the complainant*** and ***objectively offensive to a reasonable person***.

Dkt No. 3-2 at p. 7 (emphasis added). The Harassment Policy only proscribes speech that actually threatens or endangers a person's health, or alternatively, causes one to reasonably apprehend a threat or danger to his/her health/safety, which apprehension must be subjectively and objectively offensive. The Complaint is devoid of any topic the Students purportedly want to discuss that would be proscribed by the Harassment Policy. Speech First alleges the Students supposedly want to express the following in class and elsewhere on and off OSU's campus:

- They are politically conservative and hold views that are unpopular, controversial, and in the minority on campus.
- They oppose affirmative action and believe it is racism by another name.
- They oppose abortion and believe women should not be allowed to kill innocent babies.
- Laws that allow a mother and father to decide whether a baby should die if its existence is inconvenient have no place in civilized society.
- Life begins at conception and that abortion is a grave evil.

- No one has the right to end an innocent life just because a pregnancy is unplanned or unwanted.
- Marriage is only between a man and a woman.
- They are Christians and their beliefs are based in part on religious beliefs.
- Two men should not use a surrogate to carry a baby.
- They don't want to affirm that a biological male is actually a female, or vice versa.
- The Black Lives Matter organization has had a corrosive impact on race relations. No person is inherently privileged due to the color of their skin.
- America is not a systemically racist country.
- Planned Parenthood has eugenicist roots and abortion clinics target minority women.
- They oppose illegal immigration and US tax dollars should not be used to subsidize in-state tuition benefits for illegal aliens.
- Sex is inherent and immutable and there is no such thing as a "gender spectrum".
- The exponential growth in young people who identify as transgender or non-binary is because they want attention or affirmation.
- Human beings are created male or female and cannot transition from one to the other.
- They are firmly pro-life and many men who claim to be pro-choice are really just interested in avoiding the responsibility of fatherhood and living with the consequences of their decision.
- They oppose open border policies.

*See* Dkt. No. 1 at ¶¶ 54–100; *see also* Dkt. Nos. 3-4, 3-5, 3-6 (collectively the "**Desired Expressions**").

Notably absent from the Desired Expressions is any indicia of speech that would: (1) *threaten or endanger another person's health;* or (2) cause *one to reasonably apprehend a threat or danger to his/her health that another would also find objectively offensive*. First, the Desired Expressions contain only *general viewpoints* on current social, political, and legal issues (*see* Dkt. No. 1 at ¶¶ 54–100) (*see also* Dkt. Nos. 3-4, 3-5, 3-6)— topics already discussed in and out of classrooms across OSU's campus. No reasonable interpretation could lead to a conclusion that they constitute verbal abuse or qualify as

12

threatening, intimidating, harassing, coercing, and/or bullying speech. Second, the Complaint is devoid of any allegation the Students intend to direct the (non-threatening, non-intimidating) Desired Expressions towards a fellow student because of that student's circumstances, preferences, and/or beliefs. It simply alleges the Students want to "*debate with [their] fellow students*" about the topics of their Desired Expressions, "*point out the flaws in [their fellow students'] arguments*" on such topics, "*speak directly to [their] classmates about [the] topics*," and talk "frequently and repeatedly on [the] issues." Dkt. No. 1 at ¶¶ 61–63, 77–79, 92–94 (emphasis added).

Not only do the Desired Expressions fail to rise to the level of a threat or endangerment to another person's health, they also cannot be interpreted to cause one to reasonably apprehend a threat or danger to his/her health based on an objective standard. In its well-reasoned, recent decision, the United States District Court for the Western District of Virginia found Speech First lacked standing to prosecute, among others, claims challenging Virginia Tech's ("**VT**") discriminatory harassment policy, which prohibited conduct only *targeting an individual. See Sands*, 2021 WL 4315459, at *14–16. The court analyzed whether VT's harassment policy proscribed speech that Speech First claimed its alleged VT student members wanted to express (which speech was remarkably similar to the Desired Expressions in this case). The court found Speech First failed to establish standing because the anonymous students' alleged expressions did not reveal any intent "to target individual students" based on those students' particular characteristics. *See id.* at 16.

The similarities between the VT case and this case cannot be ignored. First, like the VT policy, OSU's Harassment Policy proscribes only conduct targeting an individual. *See*

*id.* Second, like the alleged student expressions in the VT case, the Desired Expressions in this case are general viewpoints—not allegations of targeted, threatening, intimidating, and/or bullying speech toward another student. *See id.*

Likewise, Plaintiff cannot overcome a factual challenge. OSU educates its campus community, particularly students, through a website (the "**Free Speech Page**") maintained by the Division of Student Affairs. *See* Declaration of Douglas Hallenbeck, attached hereto as Exhibit 2, at ¶ 7 and Ex. 2-C. On the Free Speech Page, OSU provides information regarding free expression, providing in part: "OSU values and protects the constitutional right of free speech. Through this, we seek to provide all members of the OSU community with the broadest possible latitude to speak, write, listen, challenge and learn." *Id.* Furthermore, under the heading "Controversial and Offending Speech," the Free Speech Page states: "The right to engage in the aforementioned types of expression is a protected right under our laws, and court rulings exist that articulate offensive speech and unpopular viewpoints are what need legal protection most." *Id.* at ¶ 8 and Ex. 2-C.

Additionally, the Free Speech Page states unequivocally: "There's no constitutional right to not be offended. Controversial speech is expected and valued on college campuses and in our society, which means free speech protection still applies if a speaker is shouting derogatory comments or a social media post is offensive to a particular population." *Id.* at ¶ 9 and Ex. 2-C.

Lastly, the Free Speech Page also explains the parameters of OSU's role with respect to expression:

> The university may not inhibit free speech by making direct or implicit threats of sanctions for engaging in protected speech. If the university is notified of an individual or a group of individuals who are expressing remarks that could be interpreted as offensive or hateful, but do not otherwise run afoul of the law concerning free speech the university cannot take conduct action.

*Id.* at ¶ 10 and Ex. 2-C.

The OSU campus is home to numerous student organizations, which collectively cover a broad range of viewpoints and interests. *See* Declaration of Aleigha Mariott, attached hereto as Exhibit 3, at ¶ 9. In fact, several student groups on campus represent the same viewpoints the Students allege they are fearful of expressing, including Turning Point USA, OSU Students for Life, Free Enterprise Society, College Republicans, and many Christian and/or church-affiliated groups. *See id.* These groups have, on countless occasions, reserved space for tabling, displays, exhibits, and meetings in a very public forum on campus without incident or repercussion of any kind. *See* Declaration of Adam Barnes, attached hereto as Exhibit 4, at ¶ 5. Indeed, "since 2014, groups expressing pro-life and anti-abortion views have reserved space more than 100 times." *Id.* OSU has never denied a reservation or funding for a student group based on its viewpoint, and no one in any student group expressing views similar to those held by the anonymous students has been or would be referred for discipline. *See id.* at ¶¶ 6, 7; *see also* Mariott Decl. at ¶ 8. Quite frankly, no student in any group at OSU has ever been referred for discipline for expressing ***any*** viewpoint. *See* Barnes Decl. at ¶ 7; *see also* Mariott Decl. at ¶ 8.

OSU also "routinely has conservative, and often controversial, preachers and speakers arrive on campus to speak in the outdoor public spaces on campus," including,

for example, Sister Cindy, Matt Bourgalt, and Danny Washington, all of whom "have spoken on library lawn on multiple occasions." Barnes Decl. at ¶ 8. Consistent with its commitment to diverse expression and viewpoints, OSU has not "denied access to a public forum or asked [a speaker] to leave campus based upon the content of their speech" or "disciplined or referred for discipline [any student] for expressing views similar to or counter to those of any speaker on campus." *Id.* at ¶¶ 10, 11.

Thus, these facts establish the Students can have no legitimate fear of an actual or imminent invasion of a concrete and particularized protected interest. Instead, their subjective, professed fears are purely conjectural or hypothetical, which cannot support Article III standing. *See Lujan*, 504 U.S. at 560.

As an aside—and challenging the Students' claims that they hold minority views— America is so evenly divided on the subjects of the Desired Expressions, arguably no one can ascertain whether anyone's views are truly in the minority. In the instant case, it is just as likely as not that conservative views predominate OSU's campus.

Speech First's allegation of interference is completely hypothetical and conjectural, which is fatal to Speech First's attempt to establish associational standing as to the Harassment Policy claims. Those claims must therefore be dismissed.

### ii. Bias Incident Response Team

Plaintiff's claims as to the BIRT also must fail because the BIRT does not proscribe anything at all. And, even if the Court were to find it does, the Desired Expressions fall outside the purview of the speech or conduct the BIRT may review. The BIRT "aims to *support* individuals [who] have experienced a bias incident." Dkt. No. 1 at ¶ 5; Dkt. No. 3-

2 (emphasis added). OSU defines a bias incident as an incident that "involves actions *committed against or directed toward a person or property* that are motivated in whole or in part, by a bias against a person or group of persons who possess common characteristics." Dkt. No. 1 at ¶ 5; Dkt. No. 3-2 (emphasis added). Bias is defined as "a disproportionate weight in favor of or against an idea or thing, usually in a way that is closed-minded, prejudicial, or unfair . . . ." Dkt. No. 1 at ¶¶ 5, 48; Dkt. No. 3-2.

Speech First's BIRT claims must also fail for the same reason its Harassment Policy claims fail: The Complaint is devoid of any allegation the Students want to direct their views toward any particular student. *See* Dkt. No. 1 at ¶¶ 54–100; *Sands*, 2021 WL 4315459, at *16. For this reason, Plaintiff's claims must be dismissed with prejudice.

> **b**. **The Desired Expressions are not Subject to a Credible Threat of Enforcement by the BIRT**

Speech First *also* cannot show the Students have suffered an "injury in fact" as to the BIRT claims because the Students' Desired Expressions are NOT subject to a credible threat of enforcement. *See Susan B. Anthony List*, 573 U.S. at 159–60. The BIRT "aims to *support* individuals [who] have experienced a bias incident." Dkt. No. 3-2 (emphasis added). OSU expressly informs students on *multiple* platforms the BIRT "is NOT an investigative or disciplinary body," and, true to its purpose, will "create a space for students/employees to process their experiences," "aim to reassure students or employees that their feelings are valid," and "provide follow-up training and educational opportunities." Dkt. No. 3-2 (emphasis added). Although the BIRT may refer a matter to OSU's Office of Student Support and Conduct ("**OSSC**"), a referral will occur ONLY IF

disciplinary or corrective action is otherwise a possibility under the Student Code of Conduct. *See* Dkt. No. 3-2 (emphasis added). This is not a unique function of the BIRT. "Any member of the OSU community may make a report to the OSSC about a student's behavior," whether speech related or not. Mariott Decl. at ¶ 17.

It is entirely speculative to suggest the BIRT would ever contact the Students at all.  But even if it did, the Students would face no credible threat to their First Amendment rights in a voluntary process that cannot, by rule, result in any adverse or disciplinary action. *See* Mariott Decl. at ¶¶ 18, 21, 23. Standing requires the conduct at issue be subject to a specific penalty such as an arrest, prosecution, or (potentially) an enforcement proceeding. *See* *Susan B. Anthony List*, 573 U.S. at 165–66. Plaintiff cannot make that showing here.

Although not a formal policy, OSU implemented its BIRT "in the fall of 2020 with the primary charge of supporting individuals who have experienced a bias incident." Mariott Decl. at ¶16; Hallenbeck Decl. at ¶ 20. Importantly, the BIRT is "not an investigative or disciplinary body," as explicitly outlined on its website. Mariott Decl. at ¶ 17; Hallenbeck Decl. at ¶ 21. When an individual reports an alleged incident of bias to the BIRT, a member of the BIRT contacts "the reporting party to request further information and discuss available support options," such as counseling services. Mariott Decl. at ¶ 19. Oftentimes when an incident is reported, the OSSC simply educates the reporter on the latitude given by the First Amendment and advises that even offensive speech is free speech. *Id.* Discussions with the reporting student are strictly voluntary. *Id.* at ¶ 20.

If the reporting student requests, the BIRT attempts to contact "the person alleged to have engaged in the perceived biased behavior." Mariott Decl. at ¶ 20. The BIRT makes

18

checking in on and supporting "the **student reported to have engaged in the biased conduct** . . . **a priority**, just as much as providing support to the reporting student." *Id.* (emphasis added). The OSSC clearly informs the student "the discussion is entirely voluntary and the student is not required to participate." *Id.* In offering these discussions, the "purpose . . . is to support the student as well as educate the student about how their actions impacted the reporting student, not to discipline the student or force the student to change their behavior." *Id.*

The BIRT's goal is to bring students to a deeper understanding of one another. OSU's philosophy for the BIRT is to try to seize the teachable moment to *educate*, not discipline. To date, the BIRT has received only twenty-nine (29) reports of alleged bias, a majority of which relate to "perceived offensive speech." Mariott Decl. at ¶ 18. At OSU, no speech-related incident—or any other incident for that matter—reported to the BIRT has *ever* "resulted in the initiation of disciplinary proceedings or sanctions" against a student. *Id.* at ¶ 21; *see also* Hallenbeck Decl. at ¶ 22. Thus, Plaintiff simply cannot establish a credible threat of punishment by the BIRT. *See Susan B. Anthony List*, 573 U.S. at 158.

The Seventh Circuit recently rejected a nearly identical argument Speech First made in another case. *See Killeen*, 968 F.3d at 632, *as amended on denial of reh'g and reh'g en banc* (Sept. 4, 2020). In *Killeen*, the Seventh Circuit determined Speech First lacked standing to challenge the University of Illinois's Bias Assessment and Response Team ("BART") for several reasons that nearly mirror the analysis as applied to OSU's BIRT. *First*, a report to BART was essentially of no consequence, as the university's disciplinary process did not apply to students expressing the views the anonymous students there

wished to express, and because bias-motivated speech, alone, did not constitute a student code violation. *Id.* at 639. *Second*, the anonymous students did not describe any statements they wished to make with any particularity. As such, it was unclear whether they would even be likely to be reported to BART. *Id.* at 640. *Third*, conversations with BART were optional. Students who did not respond at all or declined the offer to meet, which was usually the case, suffered no consequences. *Id. Fourth*, while BART staff were drawn from various departments with disciplinary or law enforcement functions, BART had no authority to impose sanctions. *Id.* at 641. On this point, the court rejected Speech First's argument that BART could possibly refer student code violations to the student conduct department or legal violations to campus police. The record revealed bias-motivated speech alone would not be the sole basis for a referral. *Id.* The court acknowledged some "practicalities" supporting its decision:

Consider, for example, if BART learned of a violation or potential violation of law, such as one that may put a student in imminent danger. The fact the information came through a BART webform or email to the BART did not prevent BART from sharing the information with law enforcement. BART's ability to inform the authorities of a violation, **when there would be no threat of sanction on the basis of speech absent that violation**, did not alone result in a First Amendment harm. *Id.* at 643 (emphasis added).

Likewise, in *Abbott v. Pastides*, the Fourth Circuit held even the *prospect* of facing a mandatory meeting and subsequent investigation (which is far more invasive than OSU's BIRT capabilities) was insufficient to establish Article III standing. 900 F.3d at 171. The court acknowledged the possibility of a student feeling "alarmed and thus deterred by an

official letter from a University authority . . . raising the prospect of an investigation," but nonetheless concluded:

> [A] threatened administrative inquiry will not be treated as an ongoing First Amendment inquiry sufficient to confer standing unless the administrative process itself imposes some significant burden . . . Even an objectively reasonable "threat" that the plaintiffs might someday have to meet briefly with a University official in a non-adversarial format, to provide their own version of events in response to student complaints, cannot be characterized as the equivalent of a credible threat of "enforcement" or as the kind of "extraordinarily intrusive" process that might make self-censorship an objectively reasonable response.

*Id.* at 179. In this case, Speech First has done no more than present "a wholly speculative possibility" of discipline (an objectively unreasonable one, at that), which does not establish injury-in-fact. *See Babbitt*, 442 U.S. at 302. Notably, Speech First has not alleged a ***single instance*** of an OSU student facing discipline through the BIRT, nor could it. Discipline is thus not "remotely possible" for bias-motivated speech. *See Babbitt*, 442 U.S. at 298–99; *see also Abbott*, 900 F.3d at 179.

Further, although Speech First alleges the BIRT's ability to make referrals is one way it chills speech (*see* Dkt. No. 3-1 at pp. 21–22), this argument fails because simply being able to make a referral to another office—just like any other member of the OSU community could do—cannot demonstrate standing. *See Killeen*, 968 F.3d at 643 ("The mere possibility of a referral does not demonstrate standing."); *Sands*, 2021 WL 4315459, at *12. Just like any member of the OSU community, the BIRT can refer or report an incident to an appropriate OSU department, and the fact such report is made by a BIRT member is of no consequence, as the *Killeen* court correctly concluded.

Moreover, as shown before, OSU students routinely express the same viewpoints Plaintiff describes as "chilled" and do so without repercussions. Speech First has not shown the Students are subject to a credible threat of enforcement under the BIRT Process, and thus have not suffered an injury in-fact. Its claims as to the BIRT must therefore be dismissed.

### 3. Speech First's Claims Require the Students' Participation.

Plaintiff also cannot satisfy the third prong of the associational standing test, which obligates a plaintiff to prove that neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit. *See Hunt*, 432 U.S. at 343. This third prong is prudential and not constitutional. *United Food and Com. Workers v. Brown Grp.*, 517 U.S. 544, 555 (1996). Prudential standing refers to judicially created limitations on a court's exercise of jurisdiction. *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004). These limitations include a general prohibition against a party raising another person's legal rights and a rule barring adjudication of generalized grievances that would be more appropriately addressed by the representative branches. *See Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014). First Amendment challenges ordinarily require the participation of an organization's members in the suit. *See Harris v. McRae*, 448 U.S. 297, 321 (1980).

On its face, Plaintiff's Complaint demonstrates Speech First cannot prosecute its claim without the Students' involvement. *See* Dkt. Nos. 3-4, 3-5, 3-6. Further, in order to determine if the purported Students' concerns are real and not contrived—and to simply verify they are indeed current OSU students—the Defendant is entitled to cross-examine

each of them via deposition or in court. Anonymous declarations are not only totally inadequate, they constitute hearsay and simply have **no evidentiary reliability or value** (but they do expose a major jurisdictional flaw Speech First cannot overcome). *See Do No Harm*, 2022 WL 17740157, at \*9 n.4 ("Relatedly, the [c]ourt is unable to hold the anonymous declarants to their statements under penalty of perjury as required by 28 U.S.C. § 1746.") (internal citations omitted).

Speech First boasts about having members from numerous states throughout the country. However, the Challenged Policies and Processes apply only to those Speech First student members who actually attend OSU (if any). All Students purport to be politically conservative (*see* Dkt. Nos. 1 at ¶ 55; 3-4 at ¶ 4 (Student A); Dkt. Nos. 1 at ¶ 70; 3-5 at ¶ 4 (Student B); Dkt. Nos. 1 at ¶ 87; 3-6 at ¶ 4 (Student C)), and Student B further alleges he is a Christian. *See* Dkt. Nos. 1 at ¶ 72; 3-5 at ¶ 6. However, not all conservatives share **all** the views expressed in the Anonymous Declarations, and not all Christians share the views expressed in Student B's Declaration. Speech First's Executive Director provided an affidavit verifying the allegations in Plaintiff's Complaint. *See* Dkt. No. 1 at p. 33. However, she has no personal knowledge about the supposed "chill" on the Students' First Amendment rights. Instead, she says in her affidavit, "[f]or all of the allegations not within my personal knowledge, I believe them all to be true…based on my conversations with members of Speech First, including Students A, B and C." *Id*. Those allegations are classic hearsay. Further, the Anonymous Declarations Plaintiff filed in support of its Motion for Preliminary Injunction also constitute hearsay and cannot be admitted as evidence. *See* Dkt. Nos. 3-4, 3-5, 3-6.

In *Harris v. McRae*, the Supreme Court addressed this precise principle. In that case, a group of plaintiffs, including a women's mission organization, challenged the constitutionality of the Hyde Amendment, which limited the use of Medicaid funds to reimburse costs of abortions. *See Harris*, 448 U.S. at 300–01, 30–05. The Court determined the mission organization did not satisfy the third prong of the associational standing test because prosecution of the claim required participation of some of its individual members. *See id.* at 321.

Therefore, the only way the Court can consider the content in the Anonymous Declarations **in an evidentiarily admissible form** is through the Students' direct testimony. Consequently, the Plaintiff's claims rely on the Students' participation and fail the third prong of the associational standing. Like the mission organization in *Harris*, Speech First cannot satisfy the third prong of the associational standing test and cannot prosecute this case in its own name. Only the Students, in their own names, have that right.

## IV.    CONCLUSION

In the instant case, Speech First has no standing, on its own, to bring this action. Instead, Speech First attempts to rely on associational standing. However, associational standing cannot be predicated upon supposed injury to anonymous persons. Additionally, based on the allegations in the Complaint, Speech First cannot establish either the first prong (that one or more of its members would have standing to sue in their own right) or the third prong (neither the claim, nor relief requested, would require participation of its individual members in the lawsuit) of the associational standing test. Accordingly,

Defendant's 12(b)(1) Motion to Dismiss should be sustained, and Plaintiff's Complaint dismissed in its entirety with prejudice to a future re-filing.

## CERTIFICATE OF SERVICE

I hereby certify that on this _____ day of February, 2023, I electronically transmitted the foregoing document to the Court Clerk using the ECF System for filing. The Court Clerk will transmit a Notice of Electronic Filing to the following ECF registrants:

J. Michael Connolly (*pro hac vice* forthcoming)
Cameron T. Norris
James F. Hasson (*pro hac vice* forthcoming)
Thomas S. Vaseliou (*pro hac vice* forthcoming)
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com
cam@consovoymccarthy.com
james@consovoymccarthy.com
tvaseliou@consovoymccarthy.com

Ryan Haynie, OBA No. 32796
1401 N. Lincoln Blvd.
Oklahoma City, OK 73104
(405) 590-6070
ryan@ocpathink.org

**COUNSEL FOR PLAINTIFF**

s/Steve Stephens
Steve Stephens