IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

SPEECH FIRST, INC.

    *Plaintiff*,

v.

KAYSE SHRUM, in her individual capacity and official capacity as President of Oklahoma State University,

    *Defendant*.

Case No. 5:23-cv-29-J

**PLAINTIFF'S REPLY IN SUPPORT OF ITS
MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Introduction .................................................................................................................................. 1

Argument ...................................................................................................................................... 2

    I.   Speech First likely has Article III standing. ........................................................... 2

    II.  Speech First is likely to prevail on its challenges to each policy. ....................... 9

    III. Speech First satisfies the remaining preliminary-injunction criteria. ............................ 10

Conclusion .................................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Abbott v. Pastides*, 900 F.3d 160 (4th Cir. 2018) ............................................................. 6, 7

*Am.'s Health Ins. Plans v. Hudgens*, 915 F. Supp. 2d 1340 (N.D. Ga. 2012) .................... 8

*Arcia v. Fla. Sec'y of State*, 772 F.3d 1335 (11th Cir. 2014) .............................................. 3

*Bldg. & Const. Trades Council v. Downtown Dev., Inc.*, 448 F.3d 138 (2d Cir. 2006) ....... 3

*Brown v. Davenport*, 142 S. Ct. 1510 (2022) ...................................................................... 8

*Comm. for Effective Cellular Rules v. FCC*, 53 F.3d 1309 (D.C. Cir. 1995) ...................... 3

*Constantine v. George Mason Univ.*, 411 F.3d 474 (4th Cir. 2005) .................................... 5

*Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183 (4th Cir. 2018) ....................................... 4

*Disability Rts. Wis., Inc. v. Walworth Cty. Bd. of Supervisors*, 522 F.3d 796 (7th Cir. 2008) ............. 8

*Do No Harm v. Pfizer Inc.*, 2022 WL 17740157 (S.D.N.Y. Dec. 16, 2022) ....................... 8

*Doe v. Stincer*, 175 F.3d 879 (11th Cir. 1999) .................................................................... 8

*FAIR, Inc. v. Rumsfeld*, 291 F. Supp. 2d 269 (D.N.J. 2003) .............................................. 8

*Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792 (10th Cir. 2019) .......... 2

*Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613 (10th Cir. 1998) ......................... 2

*Gates v. Collier*, 501 F.2d 1291 (5th Cir. 1974) ................................................................ 10

*Hancock Cnty. Bd. of Sup'rs v. Ruhr*, 487 F. App'x 189 (5th Cir. 2012) ............................ 9

*Harrell v. Fla. Bar*, 608 F.3d 1241 (11th Cir. 2010) ........................................................... 4

*Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114 (10th Cir. 2013) ............................... 7

*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977) ..................................... 2

*Jones v. Coleman*, 2017 WL 1397212 (M.D. Tenn. Apr. 19, 2017) ................................. 10

*Matal v. Tam*, 137 S. Ct. 1744 (2017) ............................................................................... 10

*NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449 (1958) ...................................................... 7

*NAACP v. Trump*, 298 F. Supp. 3d 209 (D.D.C. 2018) ...................................................... 8

*Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032 (9th Cir. 2015) ............................... 8

*Nat'l People's Action v. City of Blue Island*, 594 F. Supp. 72 (N.D. Ill. 1984) ................... 5

*New York v. U.S. Dep't of Com. (Census Case)*, 351 F. Supp. 3d 502 (S.D.N.Y. 2019) ..... 8

*New York v. U.S. Dep't of Commerce*, 2019 WL 190285 (S.D.N.Y. Jan. 15, 2019) ........... 8

*NRDC, Inc. v. Mineta*, 2005 WL 1075355 (S.D.N.Y. May 3, 2005) .................................. 8

*Rio Grande Found. v. Oliver*, 57 F.4th 1147 (10th Cir. 2023) ....................................... 3, 4

*SFFA v. Harvard*, 261 F. Supp. 3d 99 (D. Mass. 2017) ................................................................. 3

*Speech First, Inc. v. Cartwright*, 2021 WL 3399829 (M.D. Fla. July 29, 2021) ......................... 5, 10

*Speech First, Inc. v. Cartwright*, 32 F.4th 1110 (11th Cir. 2022) ................................................ 1, 3, 7

*Speech First, Inc. v. Fenves*, 979 F.3d 319 (5th Cir. 2020) ........................................................ passim

*Speech First, Inc. v. Khator*, 603 F. Supp. 3d 480 (S.D. Tex. 2022) ............................................ 1, 10

*Speech First, Inc. v. Killeen*, 968 F.3d 628 (7th Cir. 2020) ................................................................ 7

*Speech First, Inc. v. Schlissel*, 939 F.3d 756 (6th Cir. 2019) ..................................................... 1, 6, 7

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) .......................................................................... 8

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) .................................................................. 4

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544 (1996) ................ 3

*United States v. Stevens*, 559 U.S. 460 (2010) ................................................................................... 5

*Wollschlaeger v. Governor*, 848 F.3d 1293 (11th Cir. 2017) ............................................................. 6

*YAF v. Gates*, 560 F. Supp. 2d 39 (D.D.C. 2008) ............................................................................... 8

**Other Authorities**

*2023 College Free Speech Rankings: Okla. State Univ.*,
  FIRE, perma.cc/BT37-9VBW ......................................................................................................... 1

**INTRODUCTION**

The University's opposition has two main themes. Both prove that Speech First is right.

The University first complains that Speech First has raised similar "arguments" against "similar policies" at other universities. Opp. (Doc. 25) 1-2. Unfortunately for the University, Speech First *won* nearly all those cases. Courts rejected the same standing arguments that the University makes here. *See Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1119-24 (11th Cir. 2022); *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330-38 (5th Cir. 2020); *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 763-67 (6th Cir. 2019). And courts enjoined nearly identical harassment policies. *See Cartwright*, 32 F.4th at 1125-28; *Speech First, Inc. v. Khator*, 603 F. Supp. 3d 480, 482 (S.D. Tex. 2022). The University's "similar" policies should suffer the same fate.

The University also brags, based on a climate survey by FIRE, that it's uniquely tolerant of free speech. Opp. 2. But scoring a 74 out of 100—basically a C—isn't something to brag about. *2023 College Free Speech Rankings: Okla. State Univ.*, FIRE, perma.cc/BT37-9VBW. According to FIRE, nearly half the University's students *do* regularly censor themselves, and the University ranks 70th in terms of students' "perceived ability to have difficult conversations on campus." *Id.* Regardless, FIRE's survey doesn't evaluate the constitutionality of any policy. Speech First knows (based on amicus briefs that FIRE has filed on its behalf) that FIRE thinks the policies challenged here are unconstitutional. *See* FIRE Amicus Br., *Cartwright*, 2021 WL 4726904, at *17-23 (similar harassment policy); FIRE Amicus Br., *Speech First, Inc. v. Sands*, 2022 WL 180779, at *4-24 (4th Cir. 2022) (similar bias-response team). And despite its supposed commitment to free speech, the University admits that its computer policy violates students' First Amendment rights. Opp. 12. All three policies should be preliminarily enjoined.

## ARGUMENT

The University claims that a "heightened" standard applies because Speech First's preliminary injunction would change "the status quo." Opp. 15. Not so. The "status quo" is "the last peaceable uncontested status existing between the parties before the dispute developed—which, in this case, would be the status existing *before* [the University] enacted the challenged [policies]." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 n.3 (10th Cir. 2019) (cleaned up). Speech First's preliminary injunction thus would *preserve* the status quo. And Speech First is entitled to that relief because it likely has standing, the policies are likely unconstitutional, and the other preliminary-injunction factors follow from those conclusions.

### I. Speech First likely has Article III standing.[1]

An association has standing when (1) "its members would otherwise have standing to sue in their own right," (2) "the interests it seeks to protect are germane to the organization's purpose," and (3) "neither the claims asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The University challenges only the first and third requirements. MTD (Doc. 24) 6; *see Fenves*, 979 F.3d at 330 n.5 (Speech First obviously satisfies second *Hunt* requirement).

Speech First easily satisfies *Hunt*'s third requirement. *Id.* Members' "'individual participation' is not normally necessary when an association seeks prospective or injunctive relief for its members." *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544,

---

[1] In its opposition to the preliminary injunction, the University tries to incorporate by reference its entire motion to dismiss, where it addresses standing. Opp. 17. That maneuver is unfair because it circumvents the local rules' page limits. And it means the incorporated arguments that can be forfeited—like prudential standing and factual disputes—should be deemed forfeited. *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 623-24 (10th Cir. 1998).

546 (1996); *see Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1342 (11th Cir. 2014) ("[T]he declaratory and injunctive relief sought by the organizations does not require the individual participation of the organizations' members."); *accord Bldg. & Const. Trades Council v. Downtown Dev., Inc.*, 448 F.3d 138, 150 (2d Cir. 2006); *SFFA v. Harvard*, 261 F. Supp. 3d 99, 110 (D. Mass. 2017). And individual participation is even less necessary because Speech First brings facial challenges. *See Comm. for Effective Cellular Rules v. FCC*, 53 F.3d 1309, 1315 (D.C. Cir. 1995).

Speech First also satisfies *Hunt*'s first requirement. "At the preliminary injunction stage," Speech First must show "only that each element of standing is likely to obtain in the case." *Fenves*, 979 F.3d at 329-30. And because this case hasn't gone past the pleadings, "'general factual allegations of injury'" suffice. *Cartwright*, 32 F.4th at 1119. "[S]tanding on a chilled speech claim … [is a] low bar." *Rio Grande Found. v. Oliver*, 57 F.4th 1147, 1162 (10th Cir. 2023). Though not necessary, the three "*Walker* factors" are sufficient: the plaintiff engaged in similar speech "in the past"; states a "present desire, though no specific plans," to engage in similar speech if the policy is enjoined; and makes a "plausible claim" that the speech is currently chilled because of a "credible threat" that the policy will be enforced. *Id.* at 1161 (cleaned up). The University does not specifically contest Speech First's standing to challenge the computer policy. For the other two policies, at least one member likely meets all three *Walker* factors.

***Past Speech.*** Students A-C have engaged in the type of speech that's arguably covered by the policies. Each holds controversial views that they felt free to express before enrolling, *e.g.*, Student A Decl. (Doc. 3-4) ¶9, and each is willing to express them now only "in small circles of friends" who won't report them, *e.g.*, *id.* ¶12. These "past actions lend ample concreteness and specificity." *Rio Grande*, 57 F.4th at 1163 (cleaned up).

3

***Present Desire.*** "*Walker*'s second factor is not meant to be difficult to satisfy; affidavits stating a general desire suffice." *Id.* at 1163-64. Here, Students A-C all identify several topics that they'd like to speak about, but don't because of the challenged policies. *E.g.*, Student B Decl. (Doc. 3-5) ¶¶4-12; Student C Decl. (Doc. 3-6) ¶¶4-12.

***Credible Threat.*** "[S]tanding on a chilled-speech claim requires both subjective and objective deterrence," though "the third *Walker* factor is not an invitation for the district court to evaluate the strength of the plaintiff's evidence that it will, in fact, be chilled." *Rio Grande*, 57 F.4th at 1164 (cleaned up). "The subjective chill here is obvious": Students A-C "tailor[] [their] speech to avoid triggering" the policies. *Id.* "The objective chill is equally obvious": the policies arguably cover Student A-C's speech, and violations trigger serious consequences. *Id.*[2] Several factors exacerbate this credible threat. The policies were "recently enacted" or "revised." *Harrell v. Fla. Bar*, 608 F.3d 1241, 1257 (11th Cir. 2010). The University is "vigorously contesting" Speech First's challenges to them. *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 192 (4th Cir. 2018). And violations are easy to report. In fact, the University admits that students have been reported to the BIRT for "offensive speech." *See* Opp. 19 ("BIRT has received … twenty-nine … reports of alleged bias, a majority of which relate to 'perceived offensive speech.'"). The policies thus "plausibly dete[r] a reasonable [student]" from speaking. *Rio Grande*, 57 F.4th at 1164 (cleaned up).

---

[2] Contra the University, Opp. 10; MTD 10-12, the question for purposes of standing is not whether the policies *actually* cover a member's speech, but whether they "'arguably'" do. *Fenves*, 979 F.3d at 332 n.10; *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014).

The University does not seriously dispute, or even mention, the *Walker* factors. It instead claims that Speech First lacks standing because the University would never apply its policies unconstitutionally, because the BIRT has no real authority, and because Speech First's members are anonymous. If these arguments worked, then Speech First would have lacked standing in all its other cases. But many courts held otherwise because these arguments fail.

**1.** The University says its policies contain disclaimers expressing its "commitment" to free speech. MTD 14-15. But "disclaimers alone will not defeat standing." *Speech First, Inc. v. Cartwright*, 2021 WL 3399829, at *4 (M.D. Fla. July 29, 2021), *rev'd & vacated in other part*, 32 F.4th 1110. The University cannot draft overbroad policies, chill students' speech, and then escape judicial review by promising to make case-by-case exceptions later. *See United States v. Stevens*, 559 U.S. 460, 480 (2010) ("We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly."). If anything, these disclaimers confirm that the policies do reach protected speech. *Fenves*, 979 F.3d at 337. And besides, they cannot save the policies or defeat standing because they make the policies even *vaguer. See Nat'l People's Action v. City of Blue Island*, 594 F. Supp. 72, 79 (N.D. Ill. 1984).

The University argues that its policies cannot chill speech because other students have engaged in controversial speech on campus. MTD 14-16. The universities in *Schlissel* and *Fenves* made the same point—unsuccessfully. *See* Br. in *Schlissel*, 2018 WL 6738711, at *9-11; Br. in *Fenves*, 2019 WL 5607102, at *5-7. Universities can "*chill* [First Amendment] activity" without "*freez[ing]* it completely." *Constantine v. George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005).

The University promises (in declarations) that it has no history of enforcing its policies against protected speech. This argument is convenient since the University's disciplinary

5

records are confidential at this stage. *Fenves*, 979 F.3d at 337 n.14. And it assumes, implausibly, that the declarants know what is and isn't protected speech by the First Amendment. The University's declarations are also meaningless because they were "written after this action was filed," *Wollschlaeger v. Governor*, 848 F.3d 1293, 1306 (11th Cir. 2017) (en banc), and do not bind the University. Regardless, while past enforcement "can assure standing," its absence does not "doom" standing. *Fenves*, 979 F.3d at 336; *accord Schlissel*, 939 F.3d at 766. The challenged policies are "recently enacted" and "facially restrict expressive activity by [students]," so this Court can "assume a credible threat of prosecution" based on the existence of the "policies alone." *Fenves*, 979 F.3d at 335.

The University's arguments find little support in *Abbott v. Pastides*, 900 F.3d 160 (4th Cir. 2018). There, the court did not demand a history of past enforcement. It found no credible threat because, before the litigation, the University had met with the student about the same speech, "approved and encouraged" that speech, gave him "written notice" that "neither investigation nor sanction was forthcoming," "dismissed student complaints" about that speech, and "made no effort to sanction that speech after the fact." *Id.* at 180, 177. Nothing like that happened here. Hence why *Abbott* stressed that its decision was "limited to [its] facts" and should not be read to foreclose other challenges to an "overly broad campus harassment policy." *Id.* at 180.

**2.** As expected, the University argues that the BIRT cannot *directly* discipline students for bias incidents. Opp. 19; MTD 17-22. But the University fails to engage the long line of precedents holding that speech can be chilled indirectly. Mot. 18-22. Hence why the Fifth,

6

Sixth, and Eleventh Circuits all ruled for Speech First on this point. *See Cartwright*, 32 F.4th at 1122-24; *Fenves*, 979 F.3d at 331; *Schlissel*, 939 F.3d at 765.

*Abbott* again provides no support. That case involved student meetings that were part of the university's ordinary (and unchallenged) student-conduct process, not an elaborate bureaucratic regime designed to deter "biased" speech. The goal of this regime is not to "*educate.*" Opp. 11. If the goal were education, why create a separate response team, staff it with authority figures, formally define "bias incident," use disciplinary lingo, solicit anonymous complaints, and threaten referrals? The only reason is to prevent "biased" speech from happening in the first place. Speech First's unrebutted evidence proves that students receive that message.

This Court should not follow *Speech First, Inc. v. Killeen*, 968 F.3d 628 (7th Cir. 2020). This Court has the record evidence that the Seventh Circuit thought was missing. That court faulted Speech First for not "identify[ing] in the record specific statements any students wish to make," "through Doe affidavits or otherwise." *Id.* at 640, 643. Unlike in *Killeen*, Speech First's members here have submitted detailed "Doe" declarations and submitted a verified complaint, which counts as evidence at this stage. *E.g.*, *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1146 (10th Cir. 2013) (en banc). Speech First thus unquestionably carried its burden, even assuming (contra the Fifth and Sixth Circuits) that it didn't in *Killeen*.

**3.** The University claims that Speech First must not only identify a member with standing, but also give that member's actual name. MTD 6-9. This argument fails for three reasons.

First, Students A-C are standing members, "not … parties to the litigation." *NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 459 (1958). Speech First is the only plaintiff here, and it is not proceeding anonymously. Speech First's standing members were anonymous in *Schlissel*,

7

*Killeen*, *Fenves*, *Cartwright*, and *Khator*; yet none of those courts even suggested anonymity was an issue. And many courts have concluded that associational standing "allows for the member on whose behalf the suit is filed to remain unnamed by the organization." *Disability Rts. Wis., Inc. v. Walworth Cty. Bd. of Supervisors*, 522 F.3d 796, 802 (7th Cir. 2008).[3]

Second, even if *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009), required associations to "identif[y]" specific members, a member can be identified and described with specificity without using its "name." *YAF v. Gates*, 560 F. Supp. 2d 39, 49 (D.D.C. 2008). Though *Summers* uses the words "name" and "naming" once, the Court merely used those words as a synonym for "identify." *See Summers*, 555 U.S. at 498. It would "overread" *Summers* to think this passing language always "require[s] an organization to name the member who might have standing." *Census Case*, 351 F. Supp. 3d at 606 n.48 (cleaned up); *accord NAACP*, 298 F. Supp. 3d at 225-26 n.10 (describing that reading of *Summers* as "tenuous"); *see also Brown v. Davenport*, 142 S. Ct. 1510, 1528 (2022) ("[T]he language of an opinion is not always to be parsed as though we were dealing with the language of a statute." (cleaned up)). Even if naming were required, pseudonyms (like "Student A," "Student B," and "Student C") are still names.

Finally, the University champions *Do No Harm v. Pfizer Inc.*, 2022 WL 17740157 (S.D.N.Y. Dec. 16, 2022). But that opinion is being appealed, conflicts with every other court

---

[3] *See also, e.g.*, *Doe v. Stincer*, 175 F.3d 879, 884-85 (11th Cir. 1999) (association need not "name a specific individual"); *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015); *NAACP v. Trump*, 298 F. Supp. 3d 209, 225 & n.10 (D.D.C. 2018); *New York v. U.S. Dep't of Com. (Census Case)*, 351 F. Supp. 3d 502, 606 n.48 (S.D.N.Y. 2019); *NRDC, Inc. v. Mineta*, 2005 WL 1075355, at *5 (S.D.N.Y. May 3, 2005) (no requirement that "'individual members be identified'"); *FAIR, Inc. v. Rumsfeld*, 291 F. Supp. 2d 269, 287 (D.N.J. 2003); *New York v. U.S. Dep't of Commerce*, 2019 WL 190285, at *74 n.48 (S.D.N.Y. Jan. 15, 2019); *Am.'s Health Ins. Plans v. Hudgens*, 915 F. Supp. 2d 1340, 1351 n.13 (N.D. Ga. 2012).

to consider the issue, and violates the Supreme Court's caution against reading its opinions hyperliterally. It is squarely in the minority and not persuasive. *See Hancock Cnty. Bd. of Sup'rs v. Ruhr*, 487 F. App'x 189, 198 (5th Cir. 2012) ("We are aware of no precedent holding that an association must set forth the name of a particular member … to survive a Rule 12(b)(1) motion to dismiss").

## II. Speech First is likely to prevail on its challenges to each policy.

*Harassment Policy***.** The University insists that "[t]he Student Code contains the standard set forth in" *Davis*. Opp. 19; *see also id.* 10 ("This section contains the 'severe, pervasive and objectively offensive' standard set forth in *Davis*."). Except it doesn't. It changes that standard in two key ways—neither of which the University denies or justifies. Mot. 12-13. "By deviating from the *Davis* standard—substituting 'or' for 'and,' and prohibiting not just conduct that deprives another student of access to educational opportunities or benefits, but simply" threatens or endangers the mental health/safety of any person or that causes reasonable apprehension of such harm—Oklahoma State's "harassment policy reaches speech beyond *Davis*' scope and is overly broad." FIRE Amicus Br., *Cartwright*, 2021 WL 4726904, at *23. The University also just ignores Speech First's vagueness and strict-scrutiny arguments. Mot. 14-16. This Court should deem those arguments conceded for purposes of this motion.

*Computer Policy*. The University concedes that its computer policy, as written, "likely run[s] afoul of the First Amendment." Opp. 12-13. While it says it plans to change the policy, it admits that no change has been made. Opp. 14. And any future change—a form of voluntary cessation made only in response to this lawsuit—will not moot Speech First's request to enjoin the original policy. *Fenves*, 979 F.3d at 328-29.

9

***Bias-Incidents Policy.*** The University does not meaningfully argue that, if its bias-incidents policy objectively chills speech, then that policy is constitutional on the merits. Opp. 19-20. So if the Court finds standing, then the policy's unconstitutionality is conceded. In a single sentence, the University appears to suggest that the policy is not viewpoint-based because it's "an outlet for *all* students—including students expressing the same viewpoints as Students A, B, and C—to report incidents." Opp. 20. But the fact that the policy covers *all* "biased" viewpoints doesn't make it viewpoint neutral. *Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017).

### III. Speech First satisfies the remaining preliminary-injunction criteria.

The University concedes that if Speech First shows a likelihood of success on the merits, then the remaining preliminary-injunction criteria are satisfied. *See* Opp. 21-23. It must, since valid claims are not "speculative," chilled speech is always irreparable, no one could be harmed by enjoining a policy that's unconstitutional anyway, and the public interest favors constitutional rights. Mot. 22-23.

So, too, for the computer policy—even if the University eventually gets around to repealing it. "Changes made by defendants after suit is filed do not remove the necessity for injunctive relief." *Gates v. Collier*, 501 F.2d 1291, 1321 (5th Cir. 1974). Enjoining the original policy will protect students from the risk that it will be "reinstated," *id.*, and the University "will not be harmed by having to comply with what [it has] effectively agreed to do," *Jones v. Coleman*, 2017 WL 1397212, at *6 (M.D. Tenn. Apr. 19, 2017); *see also, e.g., Cartwright*, 2021 WL 3399829, at *7 (preliminarily enjoining a policy even though the university repealed it); *Khator*, 603 F. Supp. 3d at 481-82 (same).

### CONCLUSION

The Court should grant Speech First's preliminary-injunction motion.

| | |
|---|---|
| Date: February 13, 2023 | Respectfully submitted, |
| *s/ Ryan Haynie* <br> (signed by filing attorney with permission of attorney) <br> Ryan Haynie, OBA No. 32796 <br> 1401 N. Lincoln Blvd. <br> Oklahoma City, OK 73104 <br> (405) 590-6070 <br> ryan@ocpathink.org | */s/ Cameron T. Norris* <br> J. Michael Connolly (*pro hac vice*) <br> Cameron T. Norris <br> James F. Hasson (*pro hac vice*) <br> Thomas S. Vaseliou (*pro hac vice*) <br> CONSOVOY MCCARTHY PLLC <br> 1600 Wilson Blvd., Suite 700 <br> Arlington, VA 22209 <br> (703) 243-9423 <br> mike@consovoymccarthy.com <br> cam@consovoymccarthy.com <br> james@consovoymccarthy.com <br> tvaseliou@consovoymccarthy.com |
| | *Counsel for Speech First, Inc.* |

## CERTIFICATE OF SERVICE

On February 13, 2023, I filed this brief via ECF, which will email everyone requiring notice.

/s/ *Cameron T. Norris*

11